## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOSEPH N. TALLIE,

       **Plaintiff,**

       **v.**                      **CASE NO. 22-3152-JWL-JPO**

PITTSBURG POLICE DEPARTMENT, et al.,

       **Defendants.**

### MEMORANDUM AND ORDER

This matter is a civil rights action. The Court conducted an initial review of the case and directed Plaintiff to show cause why his complaint should not be dismissed. (Notice and Order to Show Cause, Doc. 7). Plaintiff filed two responses (Docs.11 and 13) and three motions seeking to amend his complaint (Docs. 8, 9, and 12). The Court granted Plaintiff's motions and conducted an initial review of Plaintiff's amended complaint, again finding the complaint subject to dismissal and giving Plaintiff another opportunity to show cause why it should not be dismissed. (Memorandum and Order to Show Cause, Doc. 14) ("MOSC"). Before the Court are Plaintiff's responses to the MOSC (Docs. 15, 17, and 18).

### I. Complaint

In the Complaint, Plaintiff challenges the validity of a search warrant executed at this home on July 31, 2018, alleging Defendant Nance used a "bare-bones" affidavit that included false information to obtain the warrant. He also asserts claims of excessive force and property damage in the execution of the warrant.

1

## II.  MOSC (Doc. 14)

The MOSC found that Plaintiff's claims are time-barred because they were filed beyond the two-year statute of limitations for a § 1983 action.  Further, even if the claims were not time-barred, they are subject to dismissal for other reasons.

First, Plaintiff failed to specifically state which portions of the affidavit supporting the search warrant he believes were false, making it impossible for him to state a plausible Fourth Amendment claim.  Next, Defendant Bolton-Fleming, as a state court judge, has absolute judicial immunity.  Finally, Plaintiff's allegations do not state a claim for excessive force, he does not describe each individual defendant's personal participation in any alleged violation, he does not state a constitutional claim based on property damage, and his claims are premature under *Heck v. Humphrey*.

## III.  Plaintiff's Responses

Plaintiff makes several arguments in his response to the MOSC.  First, he continues to argue that his complaint is timely because he has been continuously incarcerated and was not aware of the facts leading to the search until November of 2019.  Also, he asserts that the abstention doctrine would have prevented this Court from considering his claims until the state prosecution was complete.

Next, Plaintiff states that he does not have the affidavit available but that the affidavit provided the following information: an anonymous tipster informed the police department that Plaintiff sold a lot of marijuana and has a roommate who sells cocaine.  A traffic stop was conducted on a vehicle the affiant (Defendant Nance) observed leaving Plaintiff's suspected residence.  The affiant found marijuana in the vehicle.  The driver stated she gave the passenger a ride to the apartments, the passenger went inside for a minute, then returned to the vehicle.  The

2

driver did not know what the ride was for and did not see the passenger put marijuana in the glove compartment but denied that it belonged to her.  The affiant has a pole camera in the area of Plaintiff's apartment, and the camera recorded the vehicle pull up, the passenger enter the apartment, and the passenger leave 20 seconds later.

Plaintiff reports that at a hearing on his motion to suppress in state court, Nance said he could not remember the anonymous tipster's name, the camera did not record the events as stated in the affidavit, and the passenger denied possessing marijuana or buying drugs.

Plaintiff argues that his Fourth Amendment rights were violated by the defendants' "reliance on a bare bones affidavit containing only hearsay, conclusion, and false testimony that no reasonably well trained officer would rely on."  Doc. 15, at 3-4.

As for the excessive force claim, Plaintiff describes the officers' actions in executing the search warrant.  He states that 13 members of the Pittsburg Police Department's Special Response Team ("SRT") banged on his door briefly then kicked it in after seeing Plaintiff look out the window.  Plaintiff put up his hands as officers pointed assault rifles at him and a guest in the residence and ordered them to get on the ground.  Plaintiff complied and felt a firearm briefly pressed against his back before being handcuffed.  He was not allowed to put on a shirt before being led outside and questioned as the search was conducted.

Plaintiff complains that he was not given time to answer the door, that it was unnecessary to deploy so many officers to search a studio apartment, that the SRT members did not have to aim weapons at him, that use of the SRT was unnecessary, that the SRT did not need assault rifles, and that the officers conducting the search did not have to be so destructive.  Plaintiff also states that he is unable to identify the actions of each individual officer because they were wearing face shields and he was outside while the search occurred.  He explains that is why he names the

Pittsburg Police Department as a defendant, since it is the entity responsible for all of the actions taken by its officers.

In addressing his property claim, Plaintiff states that his couch was ripped open and his computer damaged.  He also refers generally to property taken from his apartment to be used as evidence.

Last, Plaintiff concedes that "his conviction issue" is premature under *Heck* and seeks to abandon the claim without prejudice.

## IV.  Discussion

The Court has reviewed Plaintiff's responses and finds that this matter is subject to dismissal for the following reasons.

### A.  Timeliness

Plaintiff essentially argues that his cause of action did not accrue until November of 2019 when Defendant Nance testified that some of the facts relied upon for the warrant turned out to be incorrect.  "A § 1983 action accrues when facts that would support a cause of action are or should be apparent."  *Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir. 2006).  "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur."  *Beck v. City of Muskogee Police Dept.,* 195 F.3d 553, 558 (10th Cir. 1998) (quoting *Johnson v. Johnson County Com'n. Bd.,* 925 F.2d 1299, 1301 (10th Cir. 1991)).

The Tenth Circuit has noted that a plaintiff need not have conclusive evidence of the cause of an injury to trigger the statute of limitations; rather, the limitations period begins when the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused his harm.  *Alexander v. Oklahoma,* 382 F.3d 1206, 1215-16 (10th Cir. 2004).  In *Alexander,* the

plaintiffs were survivors, or descendants of survivors, of the 1921 Tulsa Race Riot.  After a 2001 study commissioned by the Oklahoma Legislature found that municipal and county officials had contributed to the violence and destruction, the plaintiffs filed a civil rights action.  The plaintiffs argued that their complaint was timely because their claims did not accrue until the issuance of the report in 2001.  They reasoned that their causes of action lay dormant until the report was issued because, before that, they did not know the level of culpability or responsibility of the City and State.  The Tenth Circuit rejected their argument, finding that "[t]aken to its logical end, their argument would require us to craft a rule delaying accrual of a cause of action until a plaintiff has detailed knowledge of the level of culpability of each of the actors involved.  This we cannot do. Plaintiffs' injuries and the general cause of those injuries were obvious in the aftermath of the Riot. To start the running of the statute of limitations, our case law requires nothing more."  *Id*. at 1216.

Applying that reasoning to the facts of Plaintiff's case, he knew his apartment was searched, knew the manner of the search, and knew items were damaged or removed.  While he alleges that the warrant application relied on some false information, that information was not necessary for accrual of his cause of action for excessive force or for damage to his property.  *See Baker v. Bd. of Regents of State of Kansas,* 991 F.2d 628, 632 (10th Cir. 1993) ("[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue.").  Plaintiff's causes of action for excessive force and property damage accrued when the search occurred and are barred by the statute of limitations.

Plaintiff also argues that his continuous incarceration should toll the statute of limitations. The statute can be tolled for inmates "imprisoned for a term less than [their] natural life" if they do not have "access to the court for purposes of bringing an action," K.S.A. 60-515(a); but, while Plaintiff makes a conclusory statement about not having "reasonable" access to case law, he does

not provide any facts tending to show that he lacked access to the courts. *See Hood v. Prisoner Health Services, Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006).

As for Plaintiff's abstention argument, where the abstention doctrine is applicable, a plaintiff is not excused from the statute of limitations for filing a § 1983 action. His federal action may be stayed until resolution of the state court proceedings.

### B.  Fourth Amendment Claim based on Search Warrant

As stated in the MOSC, basing a search warrant on false information violates the Fourth Amendment. However, according to Plaintiff's allegations, not all of the information in the supporting affidavit was false. Plaintiff states that the pole camera did not actually capture what the affidavit claimed, and the passenger denied possessing marijuana or engaging in a drug buy. However, the police department still received the tip from an informant; Nance still observed a vehicle leaving Plaintiff's residence, which Nance stopped, searched, and found marijuana; the driver stated the passenger went inside Plaintiff's residence for a minute and got back into the vehicle; and the driver denied that the marijuana belonged to her. Based on this information, as provided by Plaintiff, the Court cannot find that the search warrant was constitutionally deficient. Plaintiff fails to state a claim for violation of his Fourth Amendment rights on the basis of the search warrant.

### C.  Fourth Amendment Excessive Force Claim

Claims that excessive force was used in the execution of a search warrant are evaluated under the Fourth Amendment's objective reasonableness standard. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Courts evaluate the reasonableness of a seizure by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests

alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).  Courts must also analyze the reasonableness of an officer's conduct "from the perspective of a reasonable officer on the scene."  *Gross v. Pirtle*, 245 F.3d 1151, 1158 (10ᵗʰ Cir. 2001) (quoting *Graham*, 490 U.S. at 396).

In general, claims of excessive force under the Fourth Amendment usually involve some evidence of physical injury.  *Estate of Redd v. Love*, 2015 WL 8665348, *7 (D. Utah Dec. 11, 2015).  Here, Plaintiff has not alleged any physical harm or injury.  His excessive force claim is based on the use of the SRT armed with assault rifles to execute the search warrant, the number of officers present, and the fact that one or more officers pointed a weapon at him.  However, physical harm is not required.  The Tenth Circuit has declined to adopt a bright line rule "dictating that force cannot be 'excessive' unless it leaves visible cuts, bruises, abrasions or scars."  *Holland ex rel. Overdorff v. Harrington*, 268 F. 3d 1179, 1195 (10ᵗʰ Cir. 2001).  Instead, the Tenth Circuit recognized that a "show of force" could give rise to an excessive force claim under the Fourth Amendment.  *Id*. at 1190, 1194.

That said, "[t]he Court is aware of, and Plaintiff cites, no cases in which the Tenth Circuit has found that the deployment of a SWAT team to execute a search warrant amounted to excessive force. To the contrary, the Tenth Circuit has intimated that even a blanket policy of sending a SWAT team to execute warrants in all narcotics cases may not offend the Fourth Amendment in the absence of evidence that the decisionmaker 'knew the team would use excessive force, intended to cause harm, or instructed the team to use excessive force.'"  *Santistevan v. City of Colo. Springs*, 983 F. Supp. 2d 1295, 1319 (D. Colo. 2013) (citing *see Whitewater v. Goss*, 192 F. App'x. 794, 798 (10th Cir. 2006)); *see also Shurtleff v. Gill*, 2019 WL 6830317, *5 (D. Utah Dec. 13, 2019), and *Halik v. Brewer*, 2022 WL 488608, *12 (D. Colo. Feb. 17, 2022), *rep. and recom.*

*adopted in part, rejected in part by Halik v. Brewer*, 2022 WL 897105 (D. Colo. Mar. 28, 2022). "Absent such facts, no violation of a constitutional right arising from the decision to deploy the SWAT team to execute the warrants [can be] established." *Holland*, 268 F.3d at 1191. Plaintiff has not asserted facts showing that whoever deployed the SRT Unit intended to cause harm or knew or instructed the team to use excessive force while executing the search warrant on his residence.

Even if Plaintiff's excessive force claim was not barred by the statute of limitations, his allegations do not demonstrate the unreasonableness required to state a claim for excessive force under the Fourth Amendment.

### D.  Property Damage Claim

"Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful[.]" *United States v. Ramirez*, 523 U.S. 65, 71 (1998). However, property damage caused during the execution of a search warrant is not per se unreasonable, as "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 257 (1979). The Court should apply the "general touchstone of reasonableness which governs Fourth Amendment analysis" in analyzing the "method of execution of the warrant." *Ramirez*, 523 U.S. at 71.

As with Plaintiff's claim of excessive force, even if the property damage claim was not barred as untimely, his allegations do not demonstrate the unreasonableness required for a Fourth Amendment violation.

## V.  Conclusion

Plaintiff has failed to show good cause why his Complaint should not be dismissed for the reasons discussed above and in the MOSC.

**IT IS THEREFORE ORDERED** that Plaintiff's Complaint is **dismissed** for failure to state a claim upon which relief may be granted and as barred by the statute of limitations.

**IT IS SO ORDERED**.

**Dated December 9, 2022, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**